ORIGINAL

# In the United States Court of Federal Claims

No. 03-468V
(Filed:  March 30, 2016)*
**\*OPINION ORIGINALLY FILED UNDER SEAL ON MARCH 10, 2016**

**FILED**

MAR 3 0 2016

U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| ROBERT R. BLOCH, JR. and KERRY M. BLOCH, Parents and natural guardians of D.J.B., a minor, ) | |
| Pro se plaintiffs, ) | Pro se; Vaccine Act; Dismissal for Failure to Prosecute; Failure to Follow Court Orders |
| v. ) | |
| SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, ) | |
| Defendant. ) | |

## OPINION[1]

**FIRESTONE**, *Senior Judge*.

This vaccine injury case comes before the court on petitioners' motion for review

of the special master's October 2, 2015 decision dismissing the petition of pro se

petitioners Robert R. Bloch, Jr. and Kerry M. Bloch, on behalf of their minor child D.J.B.

("petitioners"), for "fail[ure] to prosecute or prove this case."  Bloch v. Sec'y of Health &

---

[1] Pursuant to Rule 18(b) of Appendix B of the Rules of the United States Court of Federal Claims (the "Vaccine Rules"), this opinion was initially filed under seal on March 10, 2016 and the parties were provided an opportunity to submit requests for redactions.

Human Servs., No. 03-468V, 2015 WL 6511457, at *1 (Fed. Cl. Oct. 2, 2015).  For the

reasons discussed below, petitioners' motion for review is denied.

## I.    BACKGROUND

Petitioners initially filed their petition for vaccine compensation on February 27,

2003, under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to

-34 ("the Vaccine Act"), alleging that D.J.B. was injured by a vaccine or vaccines listed

on the Vaccine Injury Table.  Id. § 300aa-14.  Petitioners filed their petition using the

Short-Form Autism Petition for Vaccine Compensation.  On February 8, 2012, after the

medical theories which formed the basis of petitioners' original claim were rejected in

test cases under the Omnibus Autism Proceeding ("OAP"), petitioners filed an amended

petition alleging a new medical theory for their case.  Docket No. 33.  Thereafter, on

February 21, 2012, the special master ordered petitioners to file, in support of the

allegations in their amended complaint, "a reliable medical expert's opinion that one or

more vaccinations, more probably than not, played a substantial role in causing [D.J.B.'s]

injury."  Docket No. 34.

From May 2012 through March 2013, petitioners, through their attorney, filed

status updates representing that an expert was reviewing their materials.  Docket Nos. 35,

37, 39, 40.  On June 20, 2013, petitioners filed a status report indicating that they planned

to retain a medical expert.  Docket No. 43.  They did not, however, file any expert report.

On July 1, 2013, the special master again ordered petitioners to file an expert

report.  Docket No. 44.  The special master stated:

> Petitioners and petitioners' counsel are put on notice that if an expert report
> is not filed in this case within six months of the date of this Order, absent
> good cause shown, I will dismiss the petition for failure to prove the case.
>
> **Petitioners shall file their expert report by no later than August 1,
> 2013.  If petitioners do not file an expert report at that time, petitioners
> shall file a motion for an enlargement of time, pursuant to Vaccine
> Rule 19(b).  Such motion shall indicate whether or not a medical expert
> has been retained in this case.  If a medical expert has been retained
> the motion shall be accompanied by a letter from petitioners' expert
> describing what progress has been made toward producing an expert
> report and when he/she expects to complete it.**

Id. at 1-2 (emphasis in original).

On October 30, 2013, following an enlargement of time, Docket No. 46,

petitioners, through their attorney, represented that they had formally retained a medical

expert, Dr. Frances Kendall, M.D., to review their case.  Docket No. 47.  However,

petitioners did not provide an expert report.  On June 2, 2014, following five more

enlargements of time (Order filed October 31, 2013; Docket Nos. 51, 54, 56, 59),

petitioners stated that they still did not have an expert report and requested additional

time to confer with counsel and "to make further report to the [special master] or to file

an appropriate motion regarding the petition."  Docket No. 60.

On August 20, 2014, the special master authorized counsel for petitioners to serve

subpoenas on Beaches Family Health Center, Florida Department of Health in Duval

County, and Florida Department of Health – Florida SHOTS, for the purpose of obtaining

additional vaccination records.  Docket No. 70.  Petitioners represented that "information

obtained from one or both of the above named entities may assist petitioners to determine how they wish to proceed or if they can reasonably do so." Docket No. 86. It appears, however, that petitioners were unable to get all of the information they sought from those entities. Docket Nos. 80, 84.

On December 30, 2014, the special master reminded petitioners of their obligation to file an expert report. Docket No. 87. The special master stated:

> [T]his case has been pending for more than eleven years, and cannot be permitted to go on indefinitely. *Petitioners must file a report of a qualified medical expert, which supports their claim that a vaccine caused their child's condition, within 120 days of the date of this order, or their case will be dismissed.*

Id. (emphasis added).

On March 2, 2015, counsel for petitioners stated that they were "unable to file an expert report at this time." Docket No. 94 at 1. Counsel for petitioners further stated that he had advised petitioners that he was unable to proceed with representation in their case and would therefore file a motion to withdraw. Id. at 1-2.

On March 4, 2015, the special master issued an order stating, in relevant part, that:

> . . . Petitioners are hereby put on notice that they soon will be required to **represent themselves**, unless they obtain new counsel. In order to proceed with their case, they will be required to file an **expert report of a qualified medical doctor** supporting their claim. (Such expert must be willing to testify under oath at an evidentiary hearing.) I will afford Petitioners a reasonable amount of time in which to file such an expert report, **but** I will not likely find it appropriate to extend the due date for such report indefinitely, since this case has already been pending for almost 12 years. Therefore, if Petitioners wish to pursue their claim, they should proceed **now** with efforts to obtain an expert medical report.

Docket No. 95 (emphasis in original).[2]

On April 29, 2015, the special master directed petitioners, now proceeding pro se, to file an expert report by June 4, 2015. Docket No. 106. On May 22, 2015, petitioners requested additional time to file an expert report. Docket No. 108. Petitioners stated that they had only recently received case materials from their former attorney and that they were in the process of familiarizing themselves with those resources and evaluating potential expert witnesses. Id. Petitioners also noted that they found the previously identified expert unsuitable. Id. On May 27, 2015, the special master granted petitioners' request for additional time, giving them until August 3, 2015 to file an expert report, but noted that he would "*not* be likely to grant any *further* enlargements of this new deadline for filing an expert report." Docket No. 109 (emphasis in original).

On July 2, 2015, petitioners reported that they had retained a medical doctor to review their case materials and provide a report. Docket No. 110. They also reported that a chemist would support the doctor's findings. Id. In addition, petitioners requested that the special master issue a subpoena to the hospital where D.J.B. was born because petitioners believed the hospital had withheld records regarding D.J.B.'s birth, medical care, and treatment. Id. Petitioners also sought a subpoena to obtain billing records from the time of D.J.B.'s birth that they believed were provided to their second attorney by D.J.B.'s insurer. Id.

---

[2] Counsel for petitioners filed a motion to withdraw on April 27, 2015. Docket No. 104. The motion to withdraw was granted on April 28, 2015. Docket No. 105.

In an order filed July 10, 2015, the special master explained that the court's rules permitted him to approve the issuance of a subpoena but did not allow him to issue a subpoena himself. Docket No. 113 at 1 (citing Vaccine Rule 7). The special master also noted that petitioners had "had ample time to obtain relevant medical records." Id. Moreover, the special master found that there was no evidence that petitioners' second attorney had not provided all records in his possession. Id. at 1-2.[3] The special master also reminded petitioners that they had been ordered to file an expert report. Id. at 2. The special master gave petitioners additional time for filing the expert report, until August 17, 2015, but indicated that "given the extreme age of this case, I will not be likely to further extend that deadline." Id. Finally, the special master instructed petitioners to file a status report, by July 20, 2015, stating the names of the two experts whom they had retained. Id.

On July 21, 2015, petitioners filed a response to the special master's order. Docket No. 114. Petitioners again argued that D.J.B.'s birth hospital had withheld records, in particular a Hepatitis B vaccine consent/refusal form, and that their second attorney was withholding insurance billing records. Id. In a separate request, filed on July 24, 2015, petitioners asked for additional time to select expert witnesses. Docket

---

[3] Also on July 10, 2015, pursuant to instructions from the special master, the clerk of this court forwarded petitioners copies of the medical records that the court had received on July 11, 2008. See Docket Nos. 111-112 (cover letter for exhibits 1-11 copied onto compact disc by the clerk and sent to petitioners via Federal Express Delivery).

No. 115. Petitioners stated that a medical doctor had been examining their case materials

in preparation for writing an expert report. Id.

On July 30, 2015, the special master denied petitioners' request to compel the

hospital to produce records. Docket No. 116.[4] However, the special master did instruct

petitioners' second attorney to forward a copy of the requested insurance billing records

if he had them in his possession. Id.[5] Regarding petitioners' request for additional time

---

[4] After noting again that petitioners had "had ample time to obtain relevant medical records," the
special master found that:

> Two different attorneys have apparently made efforts to obtain the hospital
> records in question, and certain records of that hospital visit do appear at Ex. 2
> filed in this case, of which Petitioners have a copy. Specifically, hospital records
> concerning August 31, 1998, to Sept. 1, 1998, are scattered throughout Ex. 2,
> which consists of 85 pages, filed in four parts. I also note that on August 20,
> 2014, I authorized Petitioners' second counsel . . . to serve subpoenas upon
> several sources of medical records. [Petitioners' second counsel] then succeeded
> in using those subpoenas to obtain additional medical records, which were filed
> on October 23, 2014.

Docket No. 116 at 1. The special master continued:

> As to the "Vaccine Consent/Refusal Form", I find no record of such a
> form, nor was there a record of any Hepatitis B vaccination. However, I note that
> at Ex. 2, p. 17, a birth record dated 8-31-98, there is a box checked indicating that
> *no* neonatal medications were administered.
>     Further, in more than 26 years in presiding over Vaccine Act cases, I have
> *never* seen a case in which *birth records* contributed in any way to showing that a
> *vaccine caused any harm to* an individual. (In a few cases, birth records have
> shown that a child was damaged at or prior to birth, which might help show that a
> condition was NOT vaccine-caused.)
>     Also, the question of "consent" to a vaccination seems irrelevant, since
> under the Vaccine Act, causation is the *only* issue--the "fault" of any health
> provider is never an issue.

Id. at 2 (emphasis in original).

[5] On August 4, 2015, petitioners filed a motion to compel D.J.B.'s insurer to produce billing
records. Docket No. 117. The special master denied the motion on August 11, 2015, on the

to file an expert report, the special master stated that he would "give Petitioners ONE MORE FINAL CHANCE to obtain and file an expert report from a medical doctor, stating the conclusion that DJB's condition was caused or aggravated by one or more vaccines." Id. (emphasis in original). The special master concluded that "[i]f Petitioners fail to file such an expert report within 60 days, I will have no choice but to dismiss their case." Id.

On September 25, 2015, petitioners filed a "motion for judgment on the pleading" stating that they were sanctioning the court for the hospital's failure to comply with discovery and the failure to provide medical records. Docket No. 119. Petitioners further stated that if the court did not have all of the hospital's records for D.J.B., they wanted a "judgment on the pleading." Id. Petitioners did not file an expert report at that time or on September 29, 2015, as the special master had required in his last order, Docket No. 116.

On October 2, 2015, after the September 29, 2015 deadline had passed, the special master, consistent with his last order stating that he would "have no choice but to dismiss their case" if an expert report were not filed, issued a decision dismissing petitioners' case. Bloch, 2015 WL 6511457, at *1-2 (Docket No. 120). The special master reviewed the case's procedural history and his orders for petitioners to submit an expert report. Id. at *1. The special master also addressed petitioners' requests that the court compel D.J.B.'s birth hospital and petitioners' former attorney to produce medical records,

---

grounds that petitioners had not shown that the information they sought was relevant to the issue of whether D.J.B. suffered a vaccine-caused injury. Docket No. 118.

"many of which were already present in the record of this case." Id. at *2. The special

master concluded that despite many orders and warnings that informed petitioners that

their petition would be dismissed if they did not file an expert report, petitioners had not

timely filed an expert report or requested more time to do so. Id. Accordingly, the

special master dismissed the case on the grounds that petitioners had failed to prosecute

and had failed to follow court orders. Id. (citing Sapharas v. Sec'y of Health & Human

Servs., 35 Fed. Cl. 503 (1996); Tsekouras v. Sec'y of Health & Human Servs., 26 Cl. Ct.

439 (1992); Vaccine Rule 21(b)).

On October 6, 2015, the special master filed an order addressing petitioners'

"motion for judgment on the pleading" that they had filed on September 25, 2015, but

that did not arrive in his chambers until October 5, 2015, after the decision of dismissal

had been filed. Docket No. 121. In the October 6, 2015 order, the special master found

that "[i]n effect, [the decision to dismiss] has already complied with Petitioners' request"

because the special master had, prior to filing his decision, "carefully reviewed the record

of this case and concluded that Petitioners had failed to provide any substantial proof that

[D.J.B.] suffered a vaccine-related injury." Id. Therefore, the special master concluded,

the decision to dismiss should stand as issued. Id.

On October 15, 2015, petitioners filed a motion asking this court to review the

special master's decision. Docket No. 122. The Secretary of Health and Human Services

("respondent") filed a response on November 12, 2015. Docket No. 125.

## II.   DISCUSSION

### A.   Jurisdiction and Legal Standards

This court has jurisdiction to review the decisions of a special master in a Vaccine Act case upon a motion from the petitioner. See 42 U.S.C. § 300aa-12. Under 42 U.S.C. § 300aa-12(e), the court may:  (a) sustain the special master's decision; (b) set aside any findings of fact or conclusions of law that the court finds are arbitrary, capricious, or not in accordance with law; or (c) remand the petition to the special master for further action. A dismissal for failure to prosecute by the special master is reviewed under an abuse of discretion standard. See, e.g., Padmanabhan v. Sec'y of Health & Human Servs., No. 2016-1074, 2016 WL 463085, at *2-3 (Fed. Cir. Feb. 8, 2016) (per curiam) (citing Claude E. Atkins Enters., Inc. v. United States, 899 F.2d 1180, 1183 (Fed. Cir. 1990); Rule 41(b) of the Rules of the Court of Federal Claims ("Involuntary Dismissal; Effect"); Vaccine Rule 21(b)(1)).  The United States Court of Appeals for the Federal Circuit has found that "[a]n abuse of discretion exists when, inter alia, the [special master's] decision was based on an erroneous conclusion of law or on a clearly erroneous finding of fact." Id. at *3 (citing Matos v. Sec'y of Health & Human Servs., 35 F.3d 1549, 1552 (Fed. Cir. 1994)).  Therefore, a special master's decision should not be disturbed unless, upon a weighing of relevant factors, the court is "left with a definite and firm conviction that the [special master] committed a clear error of judgment." Id. (citing Adkins v. United States, 816 F.2d 1580, 1582 (Fed. Cir. 1987)).

**B.    The Special Master Did Not Abuse His Discretion in Dismissing the Petition.**

In their motion for review of the special master's decision, petitioners argue that

the special master abused his discretion because "[a]s fact, it is the fiduciary

responsibility of the Respondents to provide a transparent, preponderance of evidence

that vaccines did NOT injure DJB." Pet'rs' Mot. for Review 6.  Petitioners also assert

that the special master should have decided this case in their favor because respondent

initially challenged their claim based on the statute of limitations rather than on the basis

of causation.  Id. (citing respondent's motion to dismiss filed August 15, 2008, Docket

No. 14).  Petitioners argue that respondent, having failed to raise causation, should be

deemed to have conceded that D.J.B.'s autism is vaccine-caused.  Id.  Finally, petitioners

argue that the special master erred in denying their request to compel the hospital to

produce records from D.J.B.'s birth.  Id.[6]

---

[6] Petitioners also allege fraud and demand the imposition of sanctions, including punitive damages, on the special master, his law clerk, and counsel for respondent in connection with the delayed consideration of their "motion for judgment on the pleading" (Docket No. 119), filed September 25, 2015. Pet'rs' Mot. for Review 5.  In addition, petitioners allege prejudice and negligent mismanagement based on the special master's "failure to settle this case in DJB's favor many years ago." See id.  Respondent characterizes these claims as "meritless accusations made because petitioners are apparently unhappy with the dismissal of their petition." Resp't's Resp. 8.  The court agrees that these claims are without merit.  There is nothing in the record to indicate any wrongdoing on the part of the special master, his law clerk, or respondent's counsel. To the contrary, the record of status reports, orders, and other filings from the past 12 years demonstrates that the special master actively managed this case but gave petitioners, proceeding first through counsel and then pro se, ample leeway.  The record also indicates that the special master considered petitioners' September 25, 2015 motion as soon as he received a copy of it and determined that the previously filed decision of dismissal in effect complied with petitioners' request for a judgment. See Docket No. 121 (Order filed Oct. 6, 2015).  Accordingly, petitioners' demand for sanctions is **DENIED**.

Respondent argues that petitioners' motion for review should be denied and the special master's decision should be affirmed because the special master's management of this case has been fair and because his dismissal of petitioners' petition was within his sound discretion. Resp't's Resp. 8-10 (Docket No. 125).

The court now turns to each of petitioners' arguments. First, the court considers petitioners' argument that the petition should have been granted because respondent had the burden of demonstrating that the vaccines at issue did not harm D.J.B. and thus petitioners did not need to show causation. This argument is without merit. Under the Vaccine Act, causation is presumed by statute for "Table injuries." See, e.g., LaLonde v. Sec'y of Health & Human Servs., 746 F.3d 1334, 1338 (Fed. Cir. 2014). Where a petitioner, however, alleges an "off-Table injury," as in this case, the petitioner has the burden of establishing causation in fact. See, e.g., Paluck v. Sec'y of Health & Human Servs., 786 F.3d 1373, 1379 (Fed. Cir. 2015) (citation omitted). It is only after the petitioner has established causation that the burden shits to respondent to prove the injury was caused by factors unrelated to the vaccine. See 42 U.S.C. § 300aa-13(a)(1)(B).

In this connection, the Vaccine Act does not permit the special master or this court to find causation in an off-Table injury case "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). The Federal Circuit has recognized the discretion granted to the special masters to require "such evidence as may be reasonable and necessary," "the submission of such information as may be reasonable and necessary," and "the testimony of any person and the production of any documents as may be reasonable and necessary." Simanski v.

Sec'y of Health & Human Servs., 671 F.3d 1368, 1380 (Fed. Cir. 2012) (quoting

42 U.S.C. § 300aa-12(d)(3)(B)).  Thus, the burden was on petitioners in this case to

establish a plausible theory of causation with appropriate expert opinions.  Petitioners'

objection to the dismissal on the ground that they did not have to establish causation is

based on a misunderstanding of the Vaccine Act and is without merit.

Second, the court finds that petitioners' contention that dismissal was not

appropriate because respondent conceded the issue of causation is without merit.

Petitioners suggest that respondent effectively conceded liability because respondent

sought initially to dismiss their petition on statute of limitations grounds, without

mentioning causation.  Respondent's motion to dismiss (Docket No. 14), filed August 15,

2008, was submitted in accordance with the special master's scheduling order (Docket

No. 12), filed April 15, 2008, regarding stage one of resolving the OAP non-test cases.

The special master's April 15, 2008 order directed petitioners to file medical records,

which they did in part on July 11, 2008.  Docket No. 13.  The special master's April 15,

2008 order then directed respondent to file, within 45 days of petitioners' filing, a

statement regarding whether the petition was timely filed in compliance with the Vaccine

Act's statute of limitations and identifying medical records in support of that statement.

The special master's April 15, 2008 order further explained that the merits of petitioners'

case, including the issue of causation, would not be considered until the statute of

limitations issue was addressed.  Therefore, the court finds that respondent did not

concede the issue of causation by not raising it in the August 15, 2008 motion to dismiss

and that the special master did not abuse his discretion by rejecting petitioners'
contention that respondent conceded causation.

Third, the court finds that the special master did not abuse his discretion by
dismissing the petition without first ordering the production of hospital records from
D.J.B.'s birth. In their subpoena request (Docket No. 110), filed July 2, 2015, petitioners
stated that they needed additional records because the records filed with the court "likely
do not completely represent events, medical care, and treatments DJB received as a
newborn infant." They focused their request on information related to a possible
Hepatitis B vaccination and the failure to provide "consent." The special master denied
the request for a subpoena on the grounds that the records were not relevant to the
specific issue of whether a childhood vaccine caused D.J.B.'s injuries. Docket Nos. 118
(Order filed Aug. 11, 2015), 116 (Order filed July 30, 2015).

In their filing with this court, petitioners fail to address the bases for the special
master's decision to deny their subpoena request. Docket No. 116. With regard to
petitioners' request for a "Vaccine Consent/Refusal Form," the special master found "no
record of such a form, nor was there a record of any Hepatitis B vaccination." Id. at 2.
The special master found that "at Ex. 2, p. 17, a birth record dated 8-31-98, there is a box
checked indicating that no neonatal medications were administered." Id. The special
master also noted that "the question of 'consent' to a vaccination seems irrelevant, since
under the Vaccine Act, causation is the *only* issue--the 'fault' of any health provider is
never an issue." Id. (emphasis in original). Because petitioners do not explain how the
medical records they sought would have helped establish causation, the court finds that

the special master did not abuse his discretion by dismissing petitioners' case without first granting their request to compel the hospital to produce records. Petitioners have failed to show how the additional medical records would be relevant to the issue of causation.

Finally the court finds that the dismissal for failure to prosecute and failure to follow the special master's orders is supported. The court recognizes that "while special masters are given broad authority over the manner in which they conduct Vaccine Act proceedings, that authority may not be used in a way that deprives a party of procedural rights provided by the Vaccine Act and the Vaccine Rules . . . ." Simanski, 671 F.3d at 1385. Here, the special master provided petitioners with numerous opportunities and extensions of time to provide an expert report to support their case. In such circumstances, the court finds that petitioners' procedural rights were protected and that the rationale for the special master's decision to dismiss for failure to prosecute and to prove their case is well supported. In this regard, this case is similar to a recent Federal Circuit case in which the court affirmed the dismissal of a vaccine petition in analogous circumstances. In Padmanabhan v. Secretary of Health and Human Services, 2016 WL 463085, at *3-4, the Federal Circuit affirmed dismissal of pro se petitioners' case for failure to prosecute where the petitioners filed some medical records but did not comply with the chief special master's repeated orders and warnings to file complete medical records or an expert opinion regarding causation. The Federal Circuit found that the chief special master gave the petitioners "considerable leeway to pursue their claims." Id. at *4. Similar to Padmanabhan, in this case the special master issued numerous orders

for petitioners to file an expert report in support of the medical theory in their amended petition and provided repeated warnings that their case would be dismissed if they did not. The court finds that in this case, as the Federal Circuit found in Padmanabhan, the special master did not abuse his discretion in dismissing petitioners' case for failure to prosecute and follow court orders.

## III.    CONCLUSION

Petitioners' motion for review is **DENIED**. The special master's decision dismissing the petition is **SUSTAINED**. The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

NANCY B. FIRESTONE
Senior Judge